# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2182-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

S.S.,

      Defendant-Appellant,

and

V.S.,

      Defendant.

_____

IN THE MATTER OF H.S.,
C.S., and T.H., minors.

_____

Submitted February 23, 2021 – Decided March 23, 2021

Before Judges Yannotti and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FN-15-0228-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Catherine W. Wilkes, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (David B. Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

S.S. appeals from an order entered by the Family Part on August 10, 2016, which found that she abused or neglected the minor child H.S.[1] pursuant to N.J.S.A. 9:6-8.21(c). We reverse and remand the matter to the trial court for further proceedings.

I.

S.S. is the biological mother of three children: H.S., who was born in July 2009; C.S., who was born in October 2010; and T.H., who was born in September 2013. V.S. is the biological father of H.S. and C.S., and S.H. is the

---

[1] We use initials to identify the parties to protect the identity of the children. R. 1:38-3(d)(11).

2

A-2182-19

biological father of T.H. The Division of Child Protection and Permanency (Division) first became involved with the family in 2012, when V.S. contacted the Division and expressed concerns about S.S.'s ability to care for H.S. and C.S. V.S. informed the Division that he had moved to North Carolina after he and S.S. separated, and he expressed concerns about defendant's issues with substance abuse and mental health.

The Division found the allegations of neglect were unfounded and noted that S.S. reported that she had been referred for outpatient mental health services as a result of a psychiatric screening. The Division opened a case to monitor the family and provide services. S.S. attended outpatient mental health services and was referred for treatment after testifying positive for marijuana. Following a custody hearing in August 2012, V.S. returned to North Carolina with his daughter H.S., and S.S. remained in New Jersey with C.S.

Following the initial referral in 2012, the Division received a series of referrals including allegations that V.S. had sexually abused one of his siblings while he and his siblings were minors. The sibling expressed concern for the minor children, and the Division made a referral to North Carolina Child Protective Services. S.S. told the Division that V.S. was in the process of being registered as a sex offender in North Carolina because he was found to have

3

child pornography on his computer, however, she did not believe that H.S. was unsafe in his care.

In 2014, S.S. expressed concern that H.S. may have been sexually abused while she was in the care of V.S. In April 2014, the trial court awarded S.S. sole legal and residential custody of H.S. It appears that at some time, S.S. and the three children began living with S.H.

Thereafter, the Division received several Child Protective Service (CPS) referrals which included allegations of physical abuse of the children by S.S. and S.H., and environmental neglect based on unsanitary conditions in the home. The Division determined that the allegations of physical abuse by S.S. and S.H. were "not established" and many of the allegations of environmental neglect were unfounded. The Division referred the family for services, including in-home counseling.

In early 2016, the Division received additional CPS referrals in early 2016 with allegations of physical abuse based on physical discipline by S.S. and S.H., as well as ongoing concerns regarding unsanitary conditions in the home. On March 28, 2016, workers from Preferred Children's Services and Family Preservation Services (FPS) informed the Division they would be terminating

4

services due to the ongoing issues in the home, and S.S. and S.H.'s failure to make progress toward their goals.

The same day, Division caseworker Jarret Grisanti conducted an unannounced visit to the home, which he described as "very dirty and unkempt." Grisanti informed S.S. the Division was concerned that services had been terminated due to a lack of progress and he discussed the unsanitary nature of the home.

Grisanti noted that during their discussion, S.S. raised her voice indicating the service providers had done nothing to help and only criticized her. According to Grisanti, at one point during the visit, S.S. became frustrated and took "a handful of candy [which had been] laying on the living room television stand and [threw] it . . . all over the kitchen floor."

On April 16, 2016, due to concerns about the unsanitary condition of the home and additional referrals regarding S.S. and S.H.'s physical disciplinary practices, the Division filed a verified complaint against S.S., S.H., and V.S. pursuant to N.J.S.A. 30:4C-12 seeking custody, care, and supervision of the

A-2182-19

three children.[2]  The Division thereafter amended the complaint and deleted the request for custody.

On April 19, 2016, the Family Part judge entered an order, with the consent of S.S. and S.H., which granted the Division care and supervision of the children.  Among other things, the judge ordered S.S. to participate in mental health treatment and comply with other services.  The judge also ordered S.S. and S.H. to show cause why the children should not remain under the Division's care and supervision.  On May 6, 2016, S.S. called Grisanti and reported that T.H. had thrown a cup that hit H.S. in the face and caused her to sustain a "black eye."

On May 10, 2016, the return date established in the order to show cause, the judge ordered that the children would remain under the Division's care and supervision and in the physical custody of S.S. and S.H.  Among other things, the judge ordered S.S. and S.H. to participate in psychological evaluations and required S.H. to attend anger management counseling.

---

[2]  In 2014, V.S. was substantiated for sexual abuse of H.S. while the child was in his custody and has no contact with his children.  At the time the Division filed its initial complaint and during the trial court proceedings, V.S. remained incarcerated in a federal correctional facility and was deemed a dispositional defendant.

6

Later that day, Grisanti investigated H.S.'s injury. He spoke with H.S.'s school counselor on the phone and then visited the family's home where he interviewed S.S. and S.H. about the incident. S.S. said T.H. had thrown a plastic cup that struck H.S., and she showed Grisanti the hard-plastic toddler's cup. Grisanti photographed the cup and asked to speak to H.S. privately.

Initially, H.S. provided Grisanti with the same explanation for her injury that S.S. had provided. She then whispered that S.S. had actually thrown the cup at her. H.S. said she did not know what caused S.S. to throw the cup but she thought "her mother was mad about something[.]" H.S. was not sure, however, what her mother "was mad about."

After speaking with H.S., Grisanti told S.S. what H.S. said about the injury. S.S. admitted she lied. She said she was concerned the Division would remove the children if it learned she caused the injury. S.S. told Grisanti that it was an accident and she did not want to lose her children over something she did accidentally.

S.S. said she had taken the cup from C.S. and was going to refill it. She stated that she began to yell at the children because they were running and jumping on the couches in the living room. She said she was waving her arms

trying to get the children to stop. She claimed the cup accidently flew out of her hands and struck H.S.

Based on this new information about H.S.'s injury and the previous allegations of physical abuse, the Division removed the children from the custody of S.S. and S.H. on an emergency basis.[3] On May 12, 2016, the Division filed an amended complaint against S.S., S.H., and V.S. seeking custody of the children alleging that the children were abused or neglected. In the complaint, the Division cited "N.J.S.A. 9:6-8.21 et. seq., N.J.S.A. 30:4C-12, and Rule 5:12-1 et seq."

The judge entered an order dated May 12, 2016, which granted the Division temporary custody of the children. On June 10, 2016, the judge ordered that the children would remain under the Division's custody, care, and supervision. Among other things, the judge ordered S.S. to participate in a psychiatric evaluation and referred her for anger management counseling.

In July and August 2016, the judge conducted the fact-finding hearing on the Division's allegation that S.S. had abused or neglected H.S. by throwing a cup in her direction and hitting her in the eye. At the hearing, the Division

---

[3] The Division conducted a "Dodd" removal, which is an emergency removal of a child without a court order pursuant to the Dodd Act, N.J.S.A. 9:6-8.21 to -8.73.

presented testimony from Grisanti and Dr. Steven Kairys, the Chairman of Pediatrics and Director of the Child Protection Center at Jersey Shore University Medical Center, who was qualified as an expert in pediatrics and child abuse.

Dr. Kairys testified that on May 12, 2016, at the Division's request, he conducted a physical examination of H.S. and interviewed her. He stated that during the interview, H.S. told him how she sustained the injury. H.S. stated that the children had been yelling and making a fuss and that S.S. "got mad and threw a cup that . . . hit her under the eye."

Dr. Kairys testified that his physical exam revealed that H.S. suffered a "clear bruise injury," which covered a "relatively extensive" part of the area under her eye. He stated that based on his interview with H.S. and his physical examination, the bruise was an inflicted injury, which he said was "a definition of physical abuse."

Dr. Kairys explained that "inflicted injury" is a term used to describe injuries that are done to you by someone else, while "accidental injuries" occur when you fall or do something that hurts yourself. He further explained that inflicted injuries can be unintentional, but they are still categorized as inflicted because someone other than the victim caused the injury.

A-2182-19

During cross-examination, S.S.'s attorney asked Dr. Kairys whether he was aware that S.S. claimed the cup slipped out of her hand accidentally and the injury to H.S. was the result of this accident. Dr. Kairys stated that he was not aware of those claims but said "it took a fair amount of force to cause this injury. So, if something slipped out of your hand, I don't think it would have the velocity or impact to do that."

S.S.'s attorney then asked Dr. Kairys if a hand injury could cause a person to lose their grip on an item they are holding. He replied that a hand injury could cause a person to lose his or her grip. He stated that, if this had occurred, the cup would not have been thrown with "enough velocity or force to produce this" kind of injury.

Dr. Kairys also stated that it would have been prudent to have H.S.'s eye examined after the injury to ensure the eye had not been damaged. He acknowledged, however, that there was nothing wrong with H.S.'s vision when he examined her a week later, there was no damage to the eye itself, and the injury would leave H.S. with no permanent deformities.

Grisanti testified that he is Permanency Case Manager with the Division, and he had been working with the family since December 2015. Grisanti described his investigation of H.S.'s bruise. He confirmed that H.S. did not

10

believe S.S. was mad at her when she threw the cup and acknowledged that S.S. claimed it was accidental. He stated, however, that it was the Division's position that if a caregiver inflicts an injury on a child, it is considered abuse or neglect even if the resulting injury was unintentional.

Grisanti further testified that he was not aware that S.S. had an injury to her hand before the incident, but noted that during subsequent conversations, S.S. claimed the injury was the reason the cup came out of her hand. He said that on a prior visit to the home, he observed S.S. drop a light bulb. He also said that on another occasion, he saw S.S. pick up candy and throw it on the floor in frustration.

S.S. and the Law Guardian for H.S. did not present any testimony or evidence. S.S.'s attorney then argued that the injury was an accident and did not rise to the level of abuse or neglect.

The Division's attorney argued that Dr. Kairys's testimony indicated this was not a situation where the cup slipped out of S.S.'s hand. The Division's attorney asserted that the severity of the injury indicated that S.S. threw the cup towards where the children were sitting. The Division's attorney asserted that under the circumstances, S.S. failed to exercise a reasonable degree of care for H.S.

11

The judge placed her decision on the record. She found H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c) because S.S. threw the cup which injured H.S. The judge noted that Dr. Kairys "unequivocally stated" that H.S. would not have sustained the injury if the cup had merely slipped out of S.S.'s hand, as she claimed. The judge stated that Dr. Kairys had testified that the injury was "caused with force" and his testimony on this issue was "uncontroverted and unopposed."

The judge further found that S.S. caused the injury when she "intentionally [threw] a cup towards where her children were located on the couch. It hit H.S. in the eye and caused a significant black eye to her." The judge rejected S.S.'s claim that she inflicted the injury accidentally because she had previously injured her hand.

In assessing the credibility of S.S.'s claim, the judge noted that initially, S.S. had not been truthful with the Division or H.S.'s school when she reported the cause of H.S.'s injury. The judge also considered Dr. Kairys' opinion that H.S.'s eye should have been examined promptly after the injury, which did not occur. The judge memorialized her findings in an order dated August 10, 2016.

In October 2019, the judge conducted a hearing and approved the Division's permanency plan, which called for the termination of S.S. and V.S.'s

12

parental rights, following by adoption. The Division then filed a complaint for termination of parental rights, and the judge entered an order dated December 19, 2019, terminating this litigation. This appeal followed.

On appeal, S.S. argues that the August 10, 2016 order should be reversed because there is insufficient credible evidence to support the judge's finding that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(2). She also argues that the judge did not have authority to make findings of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4) because the Division did not cite that subsection of the statute in its complaint.

## II.

The scope of our review of a decision of the Family Part in an abuse or neglect proceeding is strictly limited. N.J. Div. of Youth & Fam. Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). The trial court's factual findings are binding on appeal if they are "supported by adequate, substantial and credible evidence." Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002)).

Moreover, deference to the trial court's findings of fact is especially appropriate "when the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return

of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, a trial judge's decision on a purely legal issue is subject to de novo review on appeal. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

As noted, S.S. argues that the Division failed to present sufficient evidence to support a finding that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(2). That subsection of the statute provides that a child is abused or neglected when a parent or caretaker "creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious injury or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ[.]" Ibid.

S.S. contends there is no evidence that she created a substantial or ongoing risk of physical injury to H.S. According to S.S., H.S. told Grisanti that S.S. had never thrown anything at her before or used physical discipline. She notes that Grisanti acknowledged that the Division did not have any prior allegations that S.S. had physically abused the children.

As stated previously, in its amended complaint, the Division alleged that H.S. was an abused or neglected child and cited "N.J.S.A. 9:6-8.21 et seq.,

14

N.J.S.A. 30:4C-12, and Rule 5:12-1."  The Division did not cite N.J.S.A. 9:6-8.21(c)(2) as a basis for its allegation of abuse or neglect.

However, in the complaint, the Division alleged that the children were abused or neglected because "the parents created or allowed to be created a substantial or ongoing risk of physical injury to such [child] by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ[.]"  The language of the complaint tracks the language in N.J.S.A. 9:6-8.21(c)(2).

Moreover, in the amended complaint, the Division did not cite or specifically allege that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(4).  That subsection of the statute provides that a child is abused or neglected if the child's

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [Ibid.]

On appeal, the Division and the Law Guardian argue that the judge essentially made a finding that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(4). They assert that the evidence showed that by throwing the plastic cup in the direction of the children and striking H.S., S.S. failed to exercise "a minimum degree of care" and "unreasonably" inflicted or allowed "to be inflicted harm, or substantial risk thereof . . . ." Ibid.

The term "minimum degree of care" is not defined in N.J.S.A. 9:6-8.21(c); however, the term has been defined as "conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). The difference between mere negligence and gross or wanton misconduct "turns on an evaluation of the seriousness of the actor's misconduct." Ibid. (citing McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)). Although gross or wanton misconduct requires more than simple negligence, "it can apply to situations ranging from 'slight inadvertence to malicious purpose to inflict injury.'" Id. at 178-79 (quoting McLaughlin, 56 N.J. at 305).

The defendant's conduct is "considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." Id. at 178 (citing McLaughlin, 56 N.J. at 305). If defendant's conduct is intentional and

demonstrates a reckless disregard for the child's safety, "whether the actor actually recognizes the highly dangerous character of her conduct is irrelevant. Knowledge will be imputed to the actor." Ibid.

Here, the judge found that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c) but the judge did not state whether she based her findings under subsection (c)(2) or (c)(4) of N.J.S.A. 9:6-8.21. The judge concluded that H.S. did not sustain her injury by "accidental infliction." The judge found that S.S. acted intentionally in throwing the cup which caused the injury to H.S.'s eye.

However, the judge did not make the additional findings required under N.J.S.A. 9:6-8.21(c)(2). She did not find that S.S. "created or allowed to be created a substantial or ongoing risk of physical injury to" S.S. that "would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ." N.J.S.A. 9:6-8.21(c)(2).

In addition, the judge did not make findings required under N.J.S.A. 9:6-8.21(c)(4). She did not find that S.S.'s physical condition had been "impaired" or was "in imminent danger of becoming impaired" as a result of S.S.'s failure "to exercise a minimum degree of care" resulting from the unreasonable infliction of harm or a "substantial risk thereof." The judge found that S.S. had

17

acted intentionally but did not find that S.S.'s conduct was "grossly or wantonly negligent."

Because the judge did not identify the specific section of N.J.S.A. 9:6-8.21(c) that she was relying upon for her decision, and did not make the specific findings required to determine that H.S. was an abused or neglected child under either N.J.S.A. 9:6-8.21(c)(2) or (4), we reverse the court's order of August 10, 2016, and remand the matter to the trial court for reconsideration and issuance of a new decision.

In view of our decision, we need not consider S.S.'s contention that the Division failed to present sufficient evidence to support a finding that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(2), or her contention that the judge erred by relying on Dr. Kairys' opinion that H.S.'s injury was an inflicted rather than accidental injury.

### III.

S.S. further argues that the judge could not make findings of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4) because the Division did not amend its pleading to add a cause of action under this section of the statute. As noted, in the amended complaint, the Division included factual allegations that tracked

the language of N.J.S.A. 9:6-8.21(c)(2).  The Division did not, however, cite N.J.S.A. 9:6-8.21(2) or N.J.S.A. 9:6-8.21(c)(4).

Furthermore, in the amended complaint, the Division alleged facts concerning H.S.'s injury.  Prior to the hearing, the Division provided S.S.'s attorney with a copy of Dr. Kairys' report of his physical examination of H.S., which states, among other things, that H.S. had a large bruise to her left eye which was "very consistent with being hit by an object such as a cup."  Dr. Kairys concluded that the injury was the result of "[p]hysical abuse."

The Division did not specifically allege that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(4) because S.S. failed to exercise a minimal degree of care for H.S.  The Division did not claim that, by throwing the cup in H.S.'s direction, S.S. had engaged in conduct that was" grossly or wantonly negligent, but not necessarily intentional." G.S., 157 N.J. at 178.

We are convinced that S.S. had insufficient notice that at the fact-finding hearing, the Division would be seeking a determination that H.S. was an abused or neglected child under N.J.S.A. 9:6-8.21(c)(4).  Therefore, on remand, the Division should be afforded the opportunity to amend its complaint to include a specific allegation of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4).  If the

Division amends it complaint, the parties should be afforded the opportunity to present additional testimony or evidence on that claim.

Reversed and remanded for further proceedings in conformity with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION